**RESOLUTION TRUST CORPORATION, as Receiver for Southwest Savings Association and as Conservator for Southwest Federal Savings Association, and Briercroft Service Corporation, Appellants,**

v.

**William D. COOK and Regina Cook, Appellees.**

**No. 07–91–0092–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 31, 1992.

Rehearing Denied Sept. 29, 1992.

Curry, Curry & Robinson P.C., Charles B. Frye, Lubbock, for appellant.

L. Van Williamson, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

The Resolution Trust Corporation, as receiver for Southwest Savings Association and Conservator for Southwest Federal Savings Association, and Briercroft Service Corporation challenge those parts of the trial court's judgment decreeing the savings associations, for which the Resolution Trust Corporation is receiver and conservator, liable for payments made on a voided promissory note, and decreeing Briercroft Service Corporation monetarily liable for infliction of emotional distress on a maker of the note. On the rationale expressed, we will affirm in part and reverse and remand in part.

In 1984, William D. Cook and wife, Regina Cook, contracted with Ronald Cates

d/b/a Ronald Cates Construction Company for home improvements. The Cooks obtained a $17,500 National Housing Act home improvement loan from Briercroft Service Corporation, a wholly owned subsidiary of Briercroft Savings Association, to finance their contract. Repayment of the loan was secured by the contract and a deed of trust on the Cooks' home. Claiming that Cates failed to complete the contract, the Cooks initiated an action against Cates and Briercroft Service Corporation, alleging violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987; Vernon Supp. 1992). These defendants answered and denied liability.

After the action filed, Federal Savings and Loan Insurance Corporation (FSLIC) was appointed as receiver for Briercroft Savings Association and its wholly-owned subsidiary Briercroft Service Corporation (Briercroft). FSLIC transferred the assets of Briercroft, including appellees' note and lien securing the home improvement loan, to Southwest Savings Association (Southwest Savings). The Cooks amended their pleadings to add as a defendant Southwest Savings, which answered and denied liability.

On the day of trial, 21 May 1990, a jury was sworn and impaneled, but before evidence was adduced, Southwest Savings and Briercroft moved the trial court to, and the court did, take judicial notice that the Office of Thrift Supervision closed Southwest Savings on 18 May 1990 and placed it under the jurisdiction of the Resolution Trust Corporation (RTC). They also moved for a trial amendment or, alternatively, for a continuance, in order to amend their pleadings and assert common law and statutory defenses. The court allowed the amendment, which alleged that evidence extraneous to the loan records was not admissible against them.[1]

At the conclusion of the Cooks' case-in-chief, Southwest Savings and Briercroft moved the court for a directed verdict on the Cooks' DTPA cause of action. Granting the motion, the court noted its ruling possibly left alive the Cooks' common law and equity actions against Briercroft and Southwest Savings, and instructed the Cooks to prepare a trial amendment stating their actions.

The Cooks proposed their trial amendment, asserting causes of action under several theories, two of which were "the FTC rule" and "the negligence of mental distress." Briercroft and Southwest Savings objected to the proposed amendment because, among other objections, mental distress was a new cause of action and they were surprised, but the court permitted the amendment "regarding the FTC rule regarding the negligent affliction (sic) of emotional distress and none other." Briercroft and Southwest then moved the court to grant them a short continuance on the ground of surprise.[2] The court denied the motion.

1. The trial amendment reads as follows:

   By way of further answer, Defendants would show that Southwest Savings Association has been placed in the conservatorship of the Resolution Trust Corporation. The note and lien held by Southwest is an asset subject to the conservatorship of the Resolution Trust Corporation. Plaintiffs' causes of action are based entirely, or alternatively, in part, on verbal representations which do not appear as part of the original loan transaction which is the subject of Plaintiffs' complaints against these Defendants. Therefore, in accordance with the rationale of the federal statutory and common law as contained in, inter alia, D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Federal Deposit Insurance Act of 1950, as amended, 12 U.S.C. § 1823(e), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") Pub.L. No. 101–73 (1989), any and all evidence which is extraneous to the loan records of the loan transaction between Plaintiffs and Briercroft Service Corporation are inadmissible against these Defendants and cannot be used to support any causes of action brought by Plaintiffs against these Defendants.

2. Specifically, the motion was in the following language:

   I have plead surprise, I would seek a short continuance over the holiday weekend to prepare a defense not to the FTC rule, I'm familiar with that and I wouldn't try to mislead you on that, but to the negligent infliction of emotional distress.

   I point out to the Court that the evidence would support this because Ms. Cook was un-

Later, pursuant to the court's order, the Cooks filed their trial amendment, alleging these two causes of action:

Plaintiffs would show that as holder of said note, Defendant Southwest Savings Association is liable for the misconduct of Defendant Ronald Cates d/b/a Ronald Cates Construction Co. pursuant to the Federal Trade Commission Rule, 16 C.F.R. 433.2 and the notice that appeared on the contract executed by Plaintiffs and Defendant Ronald Cates d/b/a Ronald Cates Construction Co., which read:

Notice. Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray for refund of the $4,025.46 paid on Note No. 13047–4400000545798 dated March 17, 1985 and for cancellation of said note.

\* \* \* \* \* \*

Plaintiffs would further show that Defendant Briercroft Service Corporation's actions, including but not limited to making outrageous and harassing phone calls, caused damages to Plaintiff Regina Cook and constituted the negligent infliction of emotional distress on Plaintiff Regina Cook.

The cause of action for negligent infliction of emotional distress alleged against Briercroft was submitted to the jury, together with the DTPA cause of action against Cates. On 25 May 1990, the jury answered the submitted questions favorably to the Cooks and, on 19 November 1990, they moved for judgment on the verdict.

In the interim, the Office of Thrift Supervision placed Southwest Savings into receivership and RTC was appointed receiver.

A new federal institution, Southwest Federal Savings Association, was chartered, the assets of Southwest Savings were transferred to it, and RTC was appointed conservator for the institution.

By its order dated 31 December 1990, the court added RTC, as conservator for Southwest Federal Savings Association, as a party defendant. The style of the case was changed to align the proper defendants— Ronald Cates d/b/a Cates Construction Company, RTC, as receiver for Southwest Savings Association and as conservator for Southwest Federal Savings Association, and Briercroft Service Corporation.

On the same day, the court, adhering to the jury's verdict, rendered judgment. The court decreed that the Cooks recover from Cates the amounts of $35,000 in actual damages, $2,000 statutory damages, $10,-000 in additional damages, and $30,000 in attorney's fees, together with pre- and post-judgment interest. The court additionally decreed that the Cooks recover from Briercroft the sum of $27,500 for the emotional distress the jury found Regina Cook suffered, with pre- and post-judgment interest.

By its judgment, the court also decreed that the Cooks recover their payments on the note in the stipulated sum of $4,025.46 from "Southwest Savings Association, Resolution Trust Corporation, as Receiver for Southwest Savings Association, Southwest Federal Savings Association, and Resolution Trust Corporation, as Conservator for Southwest Federal Savings Association." Further, the court effectively voided the Cooks' note by ordering that the holder of it was prohibited and estopped from collecting any unpaid balance by any judicial or non-judicial procedure, and judicially released the lien securing the payment of the note.

After their motion for new trial was overruled by operation of law, RTC, acting

able to identify the year, the date, the identity of any person who may have called her, the time of day or any other possible way that I could quickly go find this conduct or this person that may have some evidence about it. . . .

So, your Honor, I think there are grounds to grant a short continuance until next Tuesday, this being Thursday, to try to find some way to defend this claim.

And so I would move for a continuance, Judge, on the basis of surprise.

in its representative capacities, and Briercroft perfected this appeal. Since Cates did not perfect an appeal, the judgment against him became final, *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982), and the Cooks are entitled to have it affirmed.

■ With the first of their twelve points of error, RTC and Briercroft contend the trial court erred in granting the Cooks' trial amendment on the negligent infliction of emotional distress cause of action. By their third point, they contend the court erred in overruling their motion for continuance after granting the trial amendment. The points will be addressed conjointly.

At the outset, it is to be recognized that under our procedural rules, a party may amend his pleadings at such time as not to operate as a surprise to the opposing party. If during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended, and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence. Tex. R.Civ.P. 63, 66.

■ By the operation of these rules, a trial court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment contains the assertion of a new cause of action or defense and, thus, is prejudicial on its face, and the opposing party objects to the amendment. The burden of showing prejudice or surprise rests on the party resisting the amendment. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). A motion for continuance based upon the ground of surprise or prejudice is essential before the filing of a trial amendment will constitute reversible error. *Hardage v. Rouly*, 349 S.W.2d 616, 618 (Tex.Civ.App.—Beaumont 1961, writ ref'd n.r.e.).

■ The discretion vested by the rules in a trial court to allow or disallow trial amendments and to grant or deny motions for continuance is broad. Therefore, the trial court's ruling will not be disturbed unless the record shows a clear abuse of discretion. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634–35 (Tex.1986).

Developing their first- and third-point contentions, RTC and Briercroft submit that the trial amendment was based on a cause of action not previously pleaded, it constituted surprise in that Briercroft did not have notice of the cause of action, the cause of action was not tried by consent, and Briercroft did not have an opportunity to investigate the factual basis for a defense. They represent that Briercroft could not have anticipated the cause of action, because it had not been mentioned in any of the Cooks' live trial pleadings, and it was only added after the Cooks had presented their evidence and rested.

In reply, the Cooks assert that although their trial amendment changed the basis for recovery against Briercroft, the cause of action for infliction of emotional distress could have been anticipated by its mention in their pleadings as a claim for damages and by the probative evidence adduced at trial. Furthermore, they respond, that cause of action was tried by consent, and the trial amendment was designed, not to surprise or prejudice but to conform the pleadings to the evidence presented.

At the time the Cooks presented their evidence and rested, their action against Southwest Savings and Briercroft was pleaded and tried solely on the violation of the DTPA; there was no allegation of the negligent infliction of emotional distress as an independent, or alternative, cause of action. Even though they pleaded mental anguish as an element of their actual damages, for which they could recover under the DTPA if the jury found the actions were committed knowingly, *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex.1984), the trial court granted a directed verdict in favor of Southwest Savings and Briercroft on the DTPA action.

Under these circumstances, the allegation of Briercroft's negligent infliction of emotional distress in the court-sanctioned trial amendment was a new cause of action. But it does not follow that when, in presenting evidence of the DTPA action, Regina Cook testified to, and was cross-examined about, acts attributed to Briercroft and injuries she may have suffered, the new cause of action was tried by consent, for, at that time, RTC and Briercroft were not required to object. When the trial amendment was proposed, RTC and Briercroft recorded their opposition to a trial by consent, and they objected to the submission of the matter to the jury. Thus, although RTC and Briercroft did not object to Regina Cook's testimony of emotional distress, their objection to the jury submission prevented a trial by consent. *Harkey v. Texas Employers' Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922 (1948).

In our view, an adequate showing of surprise on the part of RTC and Briercroft is recorded. The new cause of action was interposed after the Cooks had presented evidence of their pleaded DTPA action-in-chief, it was not based on the same transaction giving rise to their DTPA action, and RTC and Briercroft clearly advised the court the new cause of action was unanticipated, they were unprepared to defend against it, and they needed a short continuance to prepare a defense. Moreover, as this record was postured, the amendment asserting the unanticipated new and independent cause of action constituted surprise as a matter of law. *Hardin v. Hardin,* 597 S.W.2d 347, 352 (Tex.1980) (Campbell, J., concurring).

Consequently, the trial court clearly abused its discretion in granting the trial amendment without granting the short continuance requested on the ground of surprise. *Accord Acco Intern. Paper Stock v. Sea–Land Service,* 615 S.W.2d 855, 857 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In our view, the error amounted to such a denial of the rights of Briercroft as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1).

The first and third points of error are sustained.

The sustainment of these points necessitates the reversal of that part of the judgment decreeing Briercroft's liability for the negligent infliction of emotional distress and the remand of that cause to the trial court. *Id.* However, RTC and Briercroft present other points of error by which they contend that judgment should be rendered for Briercroft.

■ RTC and Briercroft utilize their second and fifth points to attack, respectively, the granting of the trial amendment and the rendition of judgment on it, for the reason that neither was supported by the evidence. These "no evidence" points only invoke our consideration of the evidence and reasonable inferences which tend to support the court's ruling and the judgment based on the jury's findings. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence of probative value to support the court's ruling and the judgment, they cannot be set aside. *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979).

Considering the body of evidence, we discern there is some evidence of probative force to support the court's granting the trial amendment to plead Briercroft's negligent infliction of emotional distress, and the rendition of judgment on the jury's affirmative finding thereon. The testimony of Regina Cook reveals that after the Cooks complained about Cates' performance or nonperformance and a representative of Briercroft had inspected the premises, she began receiving telephone calls at night. The callers used racial epithets and racially abusive language. She could not identify the name of the persons who called; "[t]hey would just say they worked for Briercroft." The calls affected her nerves and she was constantly hurting and bleeding during her pregnancy. On one occasion, she sought treatment at the hospital emergency room.

There being some evidence to support the court's ruling and rendition of judgment, the second and fifth points of error are overruled. The overruling pretermits a

consideration of the related fourth and alternative fifth points, by which RTC and Briercroft challenge the factual sufficiency of the evidence to support the court's ruling and rendition of judgment. Even if sustained, these points would only result in the same remand for the cause of action for negligent infliction of emotional distress. Tex.R.App.P. 90(a); *Cornell & Co. v. Pace*, 703 S.W.2d 398, 404 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.).

■ By an associated point of error, their eighth one, RTC and Briercroft fault the court for granting and rendering judgment on the trial amendment, because an action for negligent infliction of emotional distress is not authorized by 16 C.F.R. 433. The brief response is that, as shown by the Cooks' amended pleadings quoted earlier, although the Cooks pleaded the contract they executed with Cates contained the notice required by Federal Trade Commission Rule, 16 C.F.R. § 433.2, as a predicate for the recovery of the amounts they paid on the note, their cause of action for the negligent infliction of emotional distress was not founded on the rule. Beyond that, the rule does not limit or foreclose a consumer's right of recovery against the creditor based on independent state grounds. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). The eighth point is overruled.

■ With their sixth and seventh points, RTC and Briercroft contend the court erred in granting appellees' trial amendment and in rendering judgment, because the amendment, any evidence in support of it, and the cause of action itself are barred by federal law. In this regard, they submit that at the time of trial Southwest Savings and Briercroft were entitled to assert federal law defenses enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and codified as the Federal Deposit Insurance Act of 1950, section 2(13)(e), 64 Stat. 889, as amended, 12 U.S.C. § 1823(e). Section 1823(e) provides:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

The statute, in brief and as pertinent here, allowed RTC to rely on the face of Briercroft's records in valuing its assets and, thus, as expressed by the statute, the *D'Oench, Duhme*—defenses offered by RTC and Briercroft are those which render unenforceable any agreements between the Cooks and Briercroft that are not expressed in their written agreements. *Larsen v. FDIC/Manager Fund*, 835 S.W.2d 66 (Tex.1992).

RTC and Briercroft predicate their contention on the argument that, since the Cooks' action for Briercroft's negligent infliction of emotional distress is based on acts not found in Briercroft's records transferred to the successor institutions under the receivership or conservatorship of RTC, the statute causes the action to be unenforceable. The argument is aimed at the wrong target.

The Cooks targeted the tort actions of Briercroft, not some unrecorded agreement they made with Briercroft which tends to diminish or defeat the right, title or interest of the successor institutions in the promissory note the Cooks delivered to Briercroft. They did not seek to hold the successor institutions liable for Briercroft's tort. Then, their action was independent of any agreement between them and Briercroft; it was not one to which the section 1823(e)—or *D'Oench, Duhme*—defenses

apply. The sixth and seventh points are overruled.

The parties stipulated that the Cooks had made payments to Briercroft Savings Association totaling $4,025.46 on their note, which was sequentially transferred from Briercroft Service Corporation to Briercroft Savings Association, to Southwest Savings Association, and to Southwest Federal Savings Association. It was evidenced that neither Southwest Savings nor Southwest Federal Savings, nor RTC, as receiver and conservator, respectively, for them, never received any payments from the Cooks, albeit the court adjudged them liable for the amount paid.

█ On this evidence, RTC and Briercroft urge, with their ninth and tenth points of error, that the court erred by granting a money judgment against the savings associations and RTC, as the respective receiver and conservator for them. They reason that an award of a "refund of payments" is not authorized by 16 C.F.R. 433 as against subsequent holders of consumer credit contracts who did not actually receive funds from the consumer makers of the contract. No authority is cited for that interpretation of the rule; instead, RTC and Briercroft, acknowledging that the Federal Trade Commission rule provides the consumer may recover amounts paid under the note, *Home Sav. Ass'n v. Guerra*, 733 S.W.2d at 135, only offer that "it does not say from whom." The reasoning is not compatible with our understanding of the applicable law.

The rule, 16 C.F.R. § 433.2, "preserved the consumer's claims and defenses against the creditor-assignee." *Id.* Thus, it is of no moment that the entities held liable for the amount paid by the Cooks never received any payments from them, for the clear and unambiguous language of the contractual provision notifies all potential holders that if they accept an assignment of the contract, they will become subject to any claims or defenses the debtor can assert against the seller. *Oxford Finance Companies, Inc. v. Velez*, 807 S.W.2d 460, 463 (Tex.App.—Austin 1991, writ denied). The Cooks established their claims against

Cates; consequently, the court did not err in rendering the money judgment. The ninth and tenth points of error are overruled.

█ RTC and Briercroft propose two other invalidations of the money judgment. They employ their eleventh point to claim that since the Cooks made their payments to Briercroft Savings Association, under federal law they must make a claim in the receivership of Briercroft Savings to recover their prior payments. In a like manner, they use their twelfth point to assert the money judgment is erroneous because the Cooks failed to exhaust their remedies as required by federal law under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989). We do not reach the merits of these points; they were not preserved for appellate review by the failure to voice to them to the trial court as grounds to avoid the money judgment. Tex.R.App.P. 52(a). The eleventh and twelfth points of error are overruled.

Accordingly, that portion of the judgment awarding William D. Cook and Regina Cook damages against Briercroft Service Corporation for the negligent infliction of emotional distress is reversed, that cause of action is severed, and the cause is remanded to the trial court. In all other respects, the judgment is affirmed.

Eighty-seven percent of the costs occasioned by this appeal are taxed to William D. Cook and Regina Cook, and thirteen percent of the costs are taxed to the Resolution Trust Corporation, as receiver for Southwest Savings Association, and as conservator for Southwest Federal Savings Association. Tex.R.App.P. 89.